IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**IVAN BOSTON,**

       **Plaintiff,**

v.                                                       Civil Action No. 2:17cv15
                                                                       (Judge Bailey)

**WILLIAM BENNETT, D.D.S.;**
**THOMAS KANE,** Director of B.O.P;
**MICHAEL WEAVER,** Health Service
Administrator; **TIFFANY SMITH,**
Chief Dentist, **REBECCA GROVE,**
Assistant Health Service Administrator,

       **Defendants.**

## REPORT AND RECOMMENDATION

### I.  Procedural History

On February 23, 2017, the Plaintiff initiated this civil rights complaint against the above-named defendants regarding dental care, or the lack thereof, that he received at FCI Gilmer. In addition, the Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*, together with a Prisoner Trust Account Report and Consent to Collection.  On April 21, 2017, the Plaintiff was granted leave to proceed *in forma pauperis,* and on May 8, 2017, he paid the required initial partial filing fee. On April 21, 2017, United States Magistrate Judge Michael Aloi reviewed the Plaintiff's complaint and determined that he might be attempting to file a Federal Tort Claim in addition to a civil rights claim under Bivens. Therefore, an Order was entered notifying the Plaintiff of the potential consequences of pursuing both a FTCA claim and a Bivens action. The Plaintiff was provided with a form to

notify the Court of his intention. On May 8, 2017, the Plaintiff returned the form which indicated he wished to proceed only with a Bivens complaint. ECF No. 12.

On January 16, 2018, Magistrate Judge Seibert, to whom the case had been transferred, conducted an initial screening and found that summary dismissal was not appropriate at that time. Therefore, the Clerk was directed to issue a sixty (60) day summons for each defendant. The summonses for Michael Weaver, Rebecca Grove, Thomas Kane and Tiffany Smith were returned as served. However, the summons for William Bennett was returned as unexecuted with a notation that he no longer was employed by the BOP.

On March 19, 2018, the Defendants who had been served filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. ECF No. 29. On March 30, 2018, a Roseboro Notice was issued. ECF No. 32. On May 29, 2018, the Plaintiff filed a response. ECF No. 49. Accordingly, this matter is now before the undersigned for a Report and Recommendation.

## II.  Issues Presented

### A.  The Complaint

In his complaint, the Plaintiff alleges that on October 7, 2015, he was evaluated at dental sick call by Dr. Smith for subjective complaints of severe pain, difficulty sleeping at night and being unable to chew his food without experiencing significant pain. The Plaintiff further alleges that Dr. Smith found damage/injury to teeth number 14 and 19 but failed to treat him on that day despite the fact that he was in significant pain. The Plaintiff indicates that he had to wait eight more days before treatment began. The Plaintiff further alleges

that on October 15, 2015, Dr. Bennett treated the two teeth, and in the process "negligently" lacerated his tongue and failed to advise him of the same. The Plaintiff describes the laceration as a ½ inch gash on the left side of his tongue and approximately 1/8 inch deep. ECF No. 1 at p. 11. The Plaintiff further alleges that because his tongue was numb, he did not realize that he had been injured until he got back to his cell and checked the dental work in his mirror. The Plaintiff notes that he returned to mainline and spoke to Defendant Weaver, who advised him to go eat and come back to medical and speak with Defendant Grove. The Plaintiff specifically alleges that the injury occurred around 7:31 a.m. and he saw Dr. Bennett again at 12:35 p.m., at which time Dr. Bennett apologized and took full responsibility. He then prescribed Trimcinolone Dental Paste. Accordingly, the Plaintiff alleges that Dr. Bennett had knowledge that he had lacerated his tongue and allowed the injury to go untreated for four hours. The Plaintiff further alleges that Dr. Bennett falsified his medical notes. The Plaintiff also alleges that Defendant Groves conspired to cover up the incident when she replied to his grievance and stated that "as soon as the incident happened the situation was discussed with the inmate." ECF No. 1 at p. 10. On the contrary, the Plaintiff insists that this is a blatant lie because no medical official discussed the laceration until 12:30 p.m. For relief, he seeks $100,000 for the permanent physical deformity he suffered and $1,000,000 in punitive damages for past, present and future pain and suffering as well as any future medical attention related to this matter.

**B. The Defendant's Answer**

For their answer, the Defendants filed a Motion to Dismiss or, on the alternative, Motion for Summary Judgment. In support of their motion, the Defendants allege that:

    1. This Court lacks personal jurisdiction over Defendant Thomas Kane;

    2. Rebecca Grove is a United States Public Health Service Employee and entitled to absolute immunity;

    3. There is not sufficient personal involvement to support <u>Bivens</u> liability against Defendants Kane, Weaver and Grove;

    4. The Plaintiff did not exhaust his administrative grievances related to any claims against Defendants Smith, Grove, Weaver and Kane;

    5. The Plaintiff cannot establish an Eight Amendment violation against Defendant Smith; and

    6. The Defendants are entitled to qualified immunity.

**C. <u>The Plaintiff's Response</u>**

In response to the Defendants' Motion to Dismiss or, for Summary Judgment, the Plaintiff appears to challenge their argument regarding supervisory liability by citing to 28 C.F.R. § 301 and obliquely to Program Statement 6031.04, which deals with patient care. In addition, the Plaintiff argues that the essence of his case is not, as suggested by the Defendants, that he simply disagrees with the care that he received. Rather, it is that while undergoing a dental procedure, staff inflicted a serious injury on his tongue. Moreover, he alleges that staff did not notify him of the injury, did not take a picture of the injury, and when he called it to their attention, he was given the "standard-sub-standard medical attention." ECF No. 49 at P. 5. Accordingly, he argues that he has satisfied both prongs of the deliberate indifference test established in <u>Farmer v. Brennan</u>, 511 U.S. 834 (1994). Finally, the Plaintiff sets forth his argument why none of the Defendants are immune from their actions.

### III.  Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id).  (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than

5

merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere

existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## IV.  Analysis

**A. Rebecca Grove**

Defendant Grove is the Assistant Health Service Administrator at FCI Gilmer. She has been a Commissioned Officer in the United States Public Health Service ("PHS") since August 4, 2008. ECF No. 29-2 at p. 2.

Title 42 U.S.C. § 233(a) makes the FTCA the exclusive civil remedy for specified action against members of the PHS. In particular, it protects commissioned officers or employee of the PHS from liability for any "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" by requiring that such lawsuits be brought against the United States instead. The United States thus, in effect, insures designated public health officials by standing in their place financially when they are

sued for the performance of their medical duties. Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000). See also, U.S. v. Smith, 499 U.S. 160, 170 n. 11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personal for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C. § 223(a) that the FTCA is a plaintiff's sole remedy against PHS employees); Apple v. Jewish Hospital and Medical Center, 570 F.Supp. 1320 (E.D.N.Y. 1983) (Motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action).

Therefore, pursuant to 42 U.S.C. § 233(a), Congress made proceeding under the FTCA the sole avenue to seeks relief against any PHS employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The Supreme Court confirmed this rule in Hui v. Castaneda, by specifically holding that the immunity provided by 233(a) precludes a Bivens action against individual PHS officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment. Hui, 559 U.S. at 802.

Therefore, as a commissioned officer of the PHS, Rebecca Grove enjoys absolute immunity from personal liability for all claims arising from the Plaintiff's medical treatment or investigation related to that medical treatment. Accordingly, she must be dismissed as a defendant in this action.

### B. Thomas Kane and Michael Weaver

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal

citation omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976). Because vicarious liability is inapplicable to Bivens and Section 1983 suits, a plaintiff must plead that each government-official, through the official's own individual actions, has violated the Constitution. Ashcraft v. Iqbal, 556 U.S. 662 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own conduct." Id. at 1948-49.

Besides naming Thomas Kane as the Director of the BOP, the Plaintiff never mentions him in the complaint and clearly fails to state what action he took which violated his constitutional rights. Accordingly, the Plaintiff has failed to state a claim for relief against Thomas Kane, and he should be dismissed as a defendant.

With respect to Michael Weaver, the Health Service Administrator, the Plaintiff alleges that he, and the other defendants violated the Fourth, Fifth and Fourteenth Amendments by failing to document the injury as required by the Inmate Accident Compensation Procedures set forth at 28 C.F.R. § 301, *et seq.* and not completing an inmate injury assessment (BP-A0362) as required by Program Statement 6031.04, Patient Care. Addressing this argument, the undersigned notes that 28 C.F.R. § 300 deals with the Federal Prisons Industries, Inc. and, in particular, inmate accident compensation. The

procedures set forth govern the payment of accident compensation, necessitated as the result of work-related injuries, to federal inmates or their dependents. In effect, it is the equivalent of worker's compensation. Clearly, the Plaintiff's injury was not work related, and therefore, the provision of this section of the Code of Federal Regulations has no application to the Plaintiff's complaint.

>In addition, a review of Program Statement 6031.04, establishes that:
>
>An inmate must complete a BP-A0362 form for even the most minor injuries, regardless whether they are related to work, recreation, assault, off-duty time, or occupational illness.
>
>In each case the inmate should be quoted directly as to how the accident or occupational illness occurred.
>
>All injury reports must be reviewed and signed by a physician as soon as possible. Under normal circumstances, this will occur the next working day.
>
>A copy of the form will be forwarded to the Safety Manager.

The language of the section of the policy does not appear to relate to an injury allegedly inflicted during a medical or dental procedure. However, even if it does apply, a claim that the BOP or one of its employees violated a Program Statement fails to rise to the level of a constitutional violation and is not cognizable under Bivens. See Grubbs v. Greer, Slip Opinion, 2008 WL 3896697 *3 (S.D. Miss. Aug. 19, 2008) (violation of P.S. 3420.09, or any program statement, does not rise to level of constitutional violation) (citing Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure to follow prison's internal regulations does not amount to constitutional violation); Bates v. Helman, 175 F.2d 1019, 1999 WL 160966 *3 (7th Cir. 1999) (violation of a program statement does not rise to the level of a constitutional violation); Ortega v. Maynard, No. 06-cv-084-HRW, 2006 WL 1877016 *2 (E.D. Ky. July 6, 2006).

For the foregoing reasons, the Plaintiff has failed to establish a constitutional violation by Michael Weaver. Therefore, he is also due to be dismissed as a defendant.

**C. Exhaustion of Administrative Grievances**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

In Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections official time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (2) to "reduce the quantity and improve the quality of prisoner suits." Therefore, the PLRA exhaustion requires full and proper

---

[1] Id.

exhaustion." Woodford, at 92-94. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. At 101-02.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).  If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based.  If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.  An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.  28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

On October 19, 2015, the Plaintiff filed an informal grievance (BP-8) alleging that when the dentist was filling his tooth, he negligently cut his tongue, and he requested compensation for the injury. ECF No. 1-1 at p.8. On October 20, 2015, the Plaintiff, his counselor, and unit manager all agreed that informal resolution of the matter was not accomplished. Id.  On October 30, 2015, the Plaintiff filed his BP-9 at the institutional level seeking compensation for the cut on his tongue due to the carelessness of the dentist. ECF No. 1-1 at p. 4. On October 30, 2015, the grievance was rejected and returned to the Plaintiff with the remark: "You cannot use the administrative remedy program to request monetary damage." Id. at p. 3. On November 23, 2015, the Plaintiff prepared his appeal to the Mid-Atlantic Regional Office (BP-10). Id. at p. 6. The remedy request was received on

December 11, 2015, and was rejected and returned that same day because the Plaintiff did not provide a copy of his BP-9 form or a copy of the response from the warden. Id. at p. 5. On January 11, 2016, the Plaintiff prepared his appeal to the Central Office (BP-11) in which he noted that the rejection of his BP-10 was improper because he did, in fact, enclose all relevant forms and paperwork. The Plaintiff specifically noted that the Mid-Atlantic Regional Office processed his grievance with the ID number 840723-R1, and the only way the Regional Office could have obtained that number would have been through the enclosed BP-9 and/or the warden's response. Id. at p. 8. The appeal was received at the Central Office on February 1, 2016, and was rejected and returned to the Plaintiff on February 8, 2018, with the notation that he must first file a BP-9 request through the institution for the warden's review before filing an appeal. In addition, it also directed the Plaintiff to resubmit to the institution for review and response and indicated that the institution had been contacted. Id. at p. 7.

The Defendants' acknowledge that the Plaintiff's remedy was inappropriately rejected at the Institutional Level because he was seeking compensation. ECF No. 29-1 at p. 11; ECF No. 29-3 at p. 2 ¶ 6. Although the Plaintiff was advised at the Central Office that he should file again at the Institution Level, and he did not do as instructed, the undersigned believes that Remedy ID No. 840723, seeking monetary damages for the laceration of his tongue should be considered exhausted. However that grievance dealt only with the actions of Dr. Bennett and is irrelevant to any of the four BOP defendants named in the complaint. Nothing in the grievance relates to Dr. Smith and her alleged failure to provide dental care from October 7, 2015, until October 15, 2015, when Dr. Bennett filled his teeth. In addition, although the BP-9 mentions speaking to Defendants

Weaver and Groves, there is absolutely no reference of any kind regarding an alleged coverup or conspiracy. Finally, he makes no allegations regarding Defendant Kane. Nor has the Plaintiff filed any other remedy relating to Dr. Smith's alleged failure to treat him, his allegation about a conspiracy to cover up a mistake, nor any allegation against former Acting Director Kane. ECF No. 29-3 at p. 3, ¶ 10.

The undersigned recognizes that several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where the plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

The Plaintiff's complaint acknowledges that there is a prisoner grievance procedure at FCI Gilmer, notes that he filed a grievance concerning the facts relating to his complaint in the prisoner grievance procedure, and attached, as directed his BP-8 through BP-11. A Plaintiff need not allege nor establish that he has exhausted his administrative grievances.

Rather, it is an affirmative defense which has been raised by the Defendants. However, the Plaintiff did not respond to the Defendants allegations of failure to exhaust administrative grievance. Therefore, neither his complaint nor his response to the Defendants' Motion to Dismiss or, for Summary Judgment has any suggestion that the administrative remedy process was rendered unavailable. Accordingly, the Plaintiff's claim against Dr. Smith is due to be dismissed.[2] In addition, even if the Plaintiff's claims regarding an alleged coverup stated a constitutional violation, it too is due to be dismissed.

### D. William Bennett, D.D.S.

As previously noted, the summons for Dr. Bennett was return as unexecuted with a notation that he was no longer employed at the BOP. In addition, the Marshal Service certified that it was unable to locate Dr. Bennett. The undersigned notes that footnote one of the Motion to Dismiss or, for Summary Judgment, indicates that Dr. Bennett is a non-governmental defendant and therefore, not represented by the United States. Because it was not absolutely clear what his status was, the undersigned issued an Order on December 14, 2018, [ECF No. 52] directing that an appropriate BOP employee file a declaration stating whether Dr. Bennet was a contract dentist or a BOP employee on October 15, 2015, when he treated the Plaintiff at FCI Gilmer.

On December 21, 2018, the Defendants filed a Declaration by Lisa Bly, who is the Human Resource Manager at FCI Gilmer, a position that she has held since November, 2011. ECF No. 53-1. According to her Declaration, Dr. Bennett completed his contractor

---

[2]Because the Plaintiff failed to exhaust his claim regarding deliberate indifference on the part of Dr Smith, the undersigned declines to address the merits of that allegation. To do so, would serve only to encourage the Plaintiff and any other inmate who becomes aware of this case to file a complaint without first exhausting his or her claims.

training on January 21, 2015. He worked at FCI Gilmer from February 25, 2015 to March 24, 2016, and typically worked one day a week. Moreover, during his employment Dr. Bennett was a contract employee not an employee of the Bureau at FCI Gilmer.

A Bivens complaint requires that a plaintiff prove two essential elements: (1) a violation of the plaintiff's constitutional rights by (2) agents acting under color of federal law. Goldstein v. Moatz, 364 F.3d 205, 210 n.8 (4th Cir. 2004). Because Bivens only applies to agents acting under color of federal law, the Fourth Circuit has expressly declined to extend a Bivens action to employees of a wholly private corporation in which the federal government has no stake other than a contractual relationship. Holly v. Scott, 434 F.3d 287, 291 (4th Cir. 2006).[3]

Because Dr. Bennett was a contract employee providing dental care, his actions are not "fairly attributable" to the federal government. Holly 434 F.3d at 291. Thus, there can be no liability under Bivens for Dr. Bennett. Id. at 294 (declining to extend Bivens liability to individual employees of a private corporation that operated a correctional facility); see also O'Neil v. Anderson, 372 Fed. App'x 400, 404 (4th Cir. 2010) (affirming dismissal of Bivens action against a private physician who was contracted to provide healthcare services to a federal correctional institution). Therefore, he should be dismissed from this action.

---

[3]Although the court in Holly also noted that the plaintiff in that case had an adequate remedy under state law against the privately-employed defendants, its decision did not depend upon the existence of an adequate state law remedy. The court found that the fact that the defendants were private individuals and not government actors "independently preclude[d] the extension of Bivens." 434 F.3d at 290.

## V.  RECOMMENDATION

In consideration of the foregoing, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss or in the alternative, Motion for Summary Judgment (Doc. 29) be **GRANTED** and the Plaintiff's complaint be **DISMISSED WITH PREJUDICE** against Rebecca Grove because she has absolute immunity as a Commissioned Officer in the United States Public Health Service and against Thomas Kane and Michael Weaver for failure to state a claim upon which relief can be granted. In addition, the undersigned **RECOMMENDS** that the Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** against Tiffany Smith for failure to exhaust administrative grievances. Finally, with respect to William Bennett, the undersigned **RECOMMENDS** that this action be **DISMISSED WITH PREJUDICE** because he is an independent contractor and not subject to suit under Bivens.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address

as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

Dated: December 26, 2018

*/s James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE